Reversed and Remanded and Opinion filed October 19, 2010. 

 

In
The

Fourteenth
Court of Appeals



NO. 14-09-00099-CV



marzo club,
llc, enero lakes, llc, febrero 
land, llc, and 2006 brazoria venture, llc, Appellants

v.

columbia lakes
homeowners association, Appellee 



On Appeal from
the 23rd District Court

Brazoria County, Texas

Trial Court
Cause No. 46253



 

OPINION

This appeal arises from a declaratory judgment action
in which the plaintiff, a homeowners association, sought a judicial
determination and declaration of its rights, power, and authority regarding its
role as a developer of a subdivision and its ability to amend the deed
restrictions for the entire development.  The defendants, who had purchased for
development several parcels identified on the plats of the subdivision, sought
summary judgment against the homeowners association on several grounds.  In
response, the homeowners association filed a competing motion for summary
judgment, seeking a declaration that all those with “developer” rights must
consent to any proposed deed restrictions.  The trial court granted the
homeowners assocation’s summary-judgment motion, denied the developers’ motion,
and rendered a final judgment.  We reverse and remand.  

I.  Factual and Procedural Background

In 1972, Tenneco Realty Development Company (“Tenneco
Realty”) began development of the Columbia Lakes Subdivision (the “Subdivision”). 
For each of the Subdivision’s five sections, a separate plat was prepared and
filed in the real property records of Brazoria County, Texas (“Real Property
Records”).  According to the restrictions filed for each section (the “Original
Restrictions”), Tenneco Realty desired “to create and carry out a uniform plan
and scheme for the improvement, development and sale of certain property in
Columbia Lakes.”  In the Original Restrictions, Tenneco Realty stated that, to
accomplish this end, it established and promulgated the restrictions and covenants
contained in the Original Restrictions upon “those properties located in
Columbia Lakes which are herein defined as the ‘Subdivision.’”  Under the terms
of the Original Restrictions, “all reserves . . . shown on the recorded plat(s)
of the Subdivision are hereby designated to be unrestricted areas and to be
used for any purpose designated by the Developer.”[1]  “Developer,”
in turn, is defined as 

Tenneco Realty . . . , its
successors and assigns, including such persons, partnerships or corporations which
in agreement with Tenneco Realty . . . , are substituted
for Tenneco Realty . . . under this instrument.  Such
substitution may relate to all or any part of this instrument and shall become
effective by the execution and recording of an appropriate amendment to this
instrument.

(emphasis added).  Though the
Developer did not impose restrictions on the reserves under the Original Restrictions,
the Developer reserved the right to impose such restrictions in the future.  In
1988, CLT Properties, Inc. (“CLT Properties”)[2]
assumed the role of Developer of the Subdivision.

Conveyances of Tracts Marked as Reserves

In August 2005, CLT Properties conveyed to Columbia
Lakes, LLC (“Columbia Lakes”) various lots in the Subdivision as well as two
tracts of land located in areas identified as reserves on a plat of one of the
sections of the Subdivision (“a Columbia Lakes Plat”).  CLT Properties also executed
and filed in the Real Property Records an “Amendment to Restrictions and
Partial Transfer and Assignment of Rights and Functions of the Developer of
Columbia Lakes Subdivision” (“Partial Transfer”).  In the Partial Transfer, CLT
Properties assigned all “its right, title, interest, equity and estate as
Developer with respect to certain real estate within Columbia Lakes
Subdivision listed in Exhibit A attached hereto (the ‘Property’)
unto Columbia Lakes, LLC. . . .” (emphasis added).  Exhibit A identifies the
real property CLT Properties conveyed to Columbia Lakes.  Columbia Lakes accepted
assignment of CLT Properties’s rights and interest  regarding the Architectural
Control Committee and Columbia Lakes Maintenance Fund Committee, and Columbia
Lakes agreed to perform the functions and obligations relating to these
committees.  CLT Properties reserved for itself and its successors “all the
right title, interest, equity and estate as Developer in the [Original] Restrictions
with respect to remainder of all property now or hereafter owned by CLT Properties,
Inc. in Columbia Lakes Subdivision.”  Columbia Lakes thereafter assigned its
right, title, and interest in its role as Developer of the Subdivision to
Columbia Lakes Homeowners Association (the “Association”).

In January 2006, CLT Properties conveyed to appellant
Febrero Land, LLC (“Febrero”) two tracts of land located on a Columbia Lakes
Plat.  Later that year, in September 2006, CLT Properties conveyed to appellant
2006 Brazoria Venture LLC (“Brazoria Venture”) two tracts of land located on a
Columbia Lakes Plat as well as an easement.  In these two conveyances, CLT
Properties did not state that it was conveying any developer rights.

In September 2006, CLT Properties conveyed to appellant
Marzo Club, LLC (“Marzo”) various tracts of land located on a Columbia Lakes
Plat, including land located in areas identified as reserves on a Columbia
Lakes Plat.  In addition, CLT Properties executed and filed in the Real Property
Records, an instrument in which CLT Properties assigned to Marzo “all of [CLT
Properties’s] right, title, interest, equity and estate as Developer in the
[Original Restriction as amended] with respect to the [property conveyed to
Marzo] unto [Marzo].”  In this instrument, the parties noted that this
assignment and the rights of Marzo under the assignment are “expressly subject
to any Amendments to Restrictions and Partial Transfer and Assignment of Rights
and Functions of the Developer of Columbia Lakes Subdivision” made before or
contemporaneously with them.  

Similarly, in September 2006, CLT Properties conveyed
to appellant Enero Lakes, LLC (“Enero”) two tracts of land located on a
Columbia Lakes Plat, including land located in areas identified as reserves on a
Columbia Lakes Plat.  In addition, CLT Properties executed and filed in the Real
Property Records, an instrument in which CLT Properties assigned to Enero “all
of [CLT Properties’s] right, title, interest, equity and estate as Developer in
the [Original Restrictions as amended] with respect to the [property conveyed
to Enero] unto [Enero].”  In this instrument, the parties noted that this
assignment and the rights of Enero under the assignment are “expressly subject
to any Amendments to Restrictions and Partial Transfer and Assignment of Rights
and Functions of the Developer of Columbia Lakes Subdivision” made before or contemporaneously
with them.  

It is undisputed that none of the conveyances to
Febrero, Brazoria Venture, Marzo, or Enero included any property conveyed to
Columbia Lakes by CLT Properties.

 

Purported
Amendments to Subdivision Restrictions

In February 2008, the Association, purportedly acting
under its authority as a Developer of the Subdivision, adopted and filed in the
Real Property Records purported amendments to the Subdivision Restrictions (the
“Purported Amendments”), which included the following new definitions and other
restrictions that are pertinent to the case under review:

“Reserves or Reserve Area(s)- All areas of real
property shown on the recorded plat(s) of the Subdivision which are designated
as a “reserve” area on said plat, or otherwise, at any time, heretofore designated
as an ‘unrestricted area.’ 

. . .

“For the purposes of this instrument, the word “Lot” shall
also be deemed to also include[] any portion of any reserve shown on the
recorded plat(s) of the Subdivision or any area identified by this instrument
or such plat(s) as an unrestricted area[], whether by platting, subdivision, or
by adoption of a condominium scheme of development, same being set aside for
individual and private use and occupancy according to the recorded plat(s) of
the Subdivision, or any recorded plat evidencing the subdivision of any Reserves
or Reserve Area(s) into individual lots, or the functional equivalent of
individual lots.”

. . .

All Reserves or Reserve Area(s) are hereby
designated restricted use areas, with the use thereof being restricted that [sic]
those uses which are currently in active operation on the affected portion of
the Reserve on the date of recording of this Amendment to the Restrictions of
Columbia Lakes Subdivision, in the [Real Property Records]. Any change in the
use of, or alteration(s) of the exterior elevations of any existing
improvements physically situated on said Reserve, or any portion thereof, shall
require prior written approval by [the Association], in its capacity as a
Developer within the Subdivision, acting either by and through its Board of
Directors, or its Architectural Control Committee duly appointed by its Board
of Directors.

Declaratory Judgment
Action

The Association then filed a declaratory judgment
action against Febrero, Enero, Marzo, and Brazoria Venture (collectively, “Developers”). 
In its petition, the Association alleged that the Developers were developing
their property, platting acreage into additional residential lots in the
Subdivision, and developing commercial ventures.  According to the Association,
the Developers declined to engage in discussions with the Association regarding
any contributions to the Maintenance Fund for the Subdivision. The Association further
alleged:

[The Association], recognizing its obligations to the
Subdivision at large, by virtue of its responsibility for not only the
collection and expenditure of the Maintenance Fund, but also its
responsibilities for exercising architectural control authority under the terms
of the Restrictions, has determined that it is appropriate for (i) areas within
the Subdivision parcels heretofore characterized as unrestricted “reserves”,
upon their development for sale, improvement and use as residential lots, to
bear their fair share of covering the expenses associated with the Subdivision
which are covered by the Maintenance Fund, and (ii) for a certain level or
control to be exercised over the architectural aspects of proposed new
development within the Subdivision on lands previously unrestricted as to their
use.

The Association sought a judicial determination and
declaration of its rights, power, and authority under the recorded documents regarding
its role as a Developer of the Subdivision.  The Association also sought a specific
declaration that the Purported Amendments are “valid and subsisting.”  The Developers
answered separately, each filing both general and specific denials, and each
seeking a declaration that the Purported Amendments are invalid and unenforceable.

Cross-Motions for Summary Judgment

The Developers moved for summary judgment on
traditional and no-evidence grounds.  They asserted the following grounds:

1.      The
parcels purchased by Brazoria Venture and Febrero are not within the boundaries
of the Subdivision.  Although part of the property purchased by these entities
is located within a large area labeled “Reserve” on Section 4 of the
Subdivision, this large “reserve” area is not included in the acreage described
as Section 4 of the Subdivision, so it is not included in the Subdivision.  

2.      The
parcels purchased by the Developers were sold to them as unrestricted property without
the Purported Amendments, which were adopted in 2008.

3.      CLT Properties
excluded from its transfer to Columbia Lakes the properties and developers’
rights that were purchased by Marzo and Enero. Thus “developer rights” within
the Subdivision are partitioned and limited by the specific parcels to which
they relate within the Subdivision.

4.      Marzo
and Enero, as Developers, did not consent to the Purported Amendments.

5.      Marzo
and Enero, as Developers, were entitled to exempt any lots in the Subdivision
from a maintenance charge.

In their summary-judgment
motion, the Developers requested the trial court to declare that the Purported
Amendments are “invalid and of no force or effect.” 

The Association then filed its own summary-judgment
motion and a response to the Developers’ motion, which may be summarized as
follows:

1.      Even
though the affidavit of the Developers’ surveyor, Raymond Williams, stated that
none of the parcels conveyed to Febrero or Brazoria Venture were within the
boundaries of the Subdivision, the Original Restrictions expressed that the
reserves were part of the Subdivision, as were other unrestricted parcels of
land, located throughout the overall Subdivision, because Tenneco Realty stated
in those restrictions that “it is the intention of the Developer to include all
of the premises, except as herein expressly excluded, in said plat . . . .” 
According to the Association, these “reserves” were subject to the provisions
of the Original Restrictions permitting the “Developer” or one with “developer
rights” to later impose restrictions.

2.      The Association
admitted that the Developers’ contention that the property sold to them was
unrestricted at the time they purchased their property is “factually correct,”
but contended that because their purchases were made from property identified
as “reserves,” they purchased their property aware that, under the Original
Restrictions, a “Developer” could later impose restrictions on the designated reserve
areas in the Subdivision.

3.      The Association
responded to the Developers’ position that developer rights were “partitioned
and limited” to the parcels of land purchased by asserting that this argument
is contrary to the Original Restrictions and Tenneco Realty’s intention to
develop all the land on the several plats in a “single development.”  The Association
admitted, however, that the “current situation presented involves there being
several entities which are vested with ‘developer rights’ within [the
Subdivision].”

4.      Responding
to the Developers’ fourth ground for summary judgment, the Association argued
that the Original Restrictions effectively require all parties with
“developer rights” within the Subdivision to consent to the imposition of any
restrictions on areas that were originally unrestricted “reserve” areas on the
plats of the Subdivision.

5.      Finally,
in response to Enero and Marzo’s argument that they, as Developers, have the
authority to exempt any Subdivision lots from the maintenance fee, the Association
pointed out that the Original Restrictions defined “Lots” to explicitly include
any portions of the reserves shown on the recorded plats of the Subdivision.

Building on its response in number 4, above, the
Association, in its summary-judgment motion, recognized that the Developers, by
taking the position set forth in their motion, had not consented to the
adoption of the Purported Amendments.  Thus, the Association did not request a
declaration that the Purported Amendments were valid.  Instead, the Association
stated as follows:

[E]ven if the [Purported
Amendments are]  invalid for lack of assent thereto by other entities with
“developer rights”, this Court should determine that—under the applicable
provisions of the Original Restrictions—all parties who have been assigned
“developer rights” in connection with the title to lands identified on the
plats of the subdivision as “reserves”—including the [Association]—must consent
to the adoption of any restrictions proposed for adoption as to any parcel
identified as a “reserve” on the plats of the Subdivision.

The Association requested a
declaration to that effect.

Trial Court’s Declaration

After considering the summary-judgment motions,
responses, and summary-judgment evidence, the trial court rendered a final
judgment, making the following declaration:

1.                 
any entity or person which is assigned, or holds record title to, “developer
rights” or the status of “Developer” in Columbia Lakes Subdivision must consent
to the adoption of restrictions or restrictive covenants proposed to be imposed
upon any parcel of land identified as a “reserve” on any of the recorded plats
of Columbia Lakes Subdivision in order for such restrictions or restrictive
covenants to be legally effective, and

2.                 
that area of land labeled “reserve” on the plat of Columbia Lakes
Subdivision, Section 4, the boundaries of which are as follows:

a.   on the south, by the
northerly line of Freeman Boulevard;

b.   [o]n the east, by the
northerly line of Freeman Boulevard and the west line of County Road 25;

c.   on the north, by the
southerly line of Olympia Drive and Block 37, Columbia Lakes, Section 4; and

d.   on the west, by the easterly
line of Olympia Drive and Block 45, Columbia Lakes Subdivision, Section 4,

is a “Reserve” parcel for the purposes of this declaration
of the respective right[s] of the parties hereto.

The Developers now challenge on appeal the trial
court’s declaratory judgment.

II.  Standard of Review

Declaratory judgments decided by summary judgment are
reviewed under the same standards of review that govern summary judgments
generally.  Tex. Civ. Prac. & Rem.
Code § 37.010 (Vernon 2008); Lidawi v. Progressive County Mut. Ins.
Co., 112 S.W.3d 725, 730 (Tex. App.—Houston [14th Dist.] 2003, no pet.).  In
our de novo review of a trial court’s summary judgment, we consider all the
evidence in the light most favorable to the nonmovant, crediting evidence
favorable to the nonmovant if reasonable jurors could, and disregarding
contrary evidence unless reasonable jurors could not.  Mack Trucks, Inc. v.
Tamez, 206 S.W.3d 572, 582 (Tex. 2006).  When, as in this case, the grounds
upon which the trial court relied are not specified in the order granting
summary judgment, we must affirm the summary judgment if any of the independent
summary-judgment grounds is meritorious.  FM Props. Operating Co. v. City of
Austin, 22 S.W.3d 868, 872 (Tex. 2000).  

In this case, the trial court was asked to render a
declaratory judgment based on various instruments recorded in the Real Property
Records.  These instruments are subject to the general rules of contract
construction.  See Pilarcik v. Emmons, 966 S.W.2d 474, 478 (Tex. 1998). 
In construing contracts, our primary objective is to ascertain and give effect
to the intentions of the parties as expressed in the contract.  Kelley-Coppedge,
Inc. v. Highlands Ins. Co., 980 S.W.2d 462, 464 (Tex. 1998).  To ascertain
the parties’ true intentions, we examine the entire agreement in an effort to
harmonize and give effect to all provisions of the contract so that none will
be rendered meaningless.  MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.,
995 S.W.2d 647, 652 (Tex. 1999).  Whether a contract is ambiguous is a question
of law for the court.  Heritage Res., Inc. v. NationsBank, 939 S.W.2d
118, 121 (Tex.  1996).  A contract is ambiguous when its meaning is uncertain
and doubtful or is reasonably susceptible to more than one interpretation.  Id. 
However, when a written contract is worded so that it can be given a certain or
definite legal meaning or interpretation, it is unambiguous, and the court
construes it as a matter of law.  Am.  Mfrs. Mut. Ins. Co. v. Schaefer,
124 S.W.3d 154, 157 (Tex. 2003).

III.  Issues and Analysis

A.        Is the trial court’s judgment
supported by the pleadings?

In their first issue, the Developers contend that the
trial court erred in granting summary judgment because the trial court’s
judgment was not supported by the pleadings.  The Developers point out that the
Association did not specifically request in its petition that the trial court
make the declaration contained in its judgment.  Nonetheless, in its petition the
Association requested a judicial determination and declaration of the Association’s
rights, power, and authority under the recorded documents regarding its role as
a Developer of the Subdivision.  Because no special exceptions have been
asserted against the petition, this court must construe that pleading liberally
in the Association’s favor to include all claims that reasonably may be
inferred from the language used therein.  See Horizon/CMS
Healthcare Corp. v. Auld, 34 S.W.3d 887, 897 (Tex. 2000).  Though the Association
did not specifically request the declaration made by the trial court, its
general request was sufficient to constitute a request for the relief granted
in the trial court’s judgment.[3] 
Accordingly, we overrule the Developers’ first issue.

B.        Did the trial court err in granting
the Association’s summary-judgment motion because the Association acquired only
partial developer rights?

In their third issue, the Developers assert that the
trial court erred in declaring that all Developers or those with “developer rights”
must consent to the adoption of any restrictions to be imposed on any parcel of
land identified as a “reserve” on a Columbia Lakes Plat for such restriction to
be legally effective.  The Developers assert that the trial court erred because
the Association acquired only partial developer rights.  

As stated in the Original Restrictions, the
“Developer” reserves the right to impose new restrictions “as to all or any
portion of the reserves of the Subdivision identified on the aforesaid
plat(s).”  In addition, no amendment to the Original Restrictions relating to
these reserves is effective unless the “Developer” consents.  The Association
has argued that, under the foregoing language from the Original Restrictions,
Marzo, Enero, and the Association all must consent before any new restrictions
are placed on these reserves, given that Marzo, Enero, and the Association are
all “Developers.”  But, in the Original Restrictions, it is expressly
contemplated that “Developer” may include several entities that by agreement
with Tenneco Realty are substituted in as “Developer” under the Original
Restrictions.  Under the unambiguous language of the Partial Transfer, CLT
Properties (Tenneco Realty’s assignee) agreed with Columbia Lakes that Columbia
Lakes would receive the right to be substituted in as Developer under the
Original Restrictions (“Developer Rights”), but only as to the property
conveyed to Columbia Lakes by CLT Properties (collectively, the “Columbia Lakes
Properties”).  CLT Properties expressly reserved all Developer Rights regarding
property not conveyed by CLT Properties to Columbia Lakes.  As the assignee of
Columbia Lakes’s Developer Rights, the Association has no greater Developer Rights
than its assignor, Columbia Lakes.  See Adams v.
Petrade Int’l, 754 S.W.2d 696, 720–21
(Tex. App.—Houston [1st Dist.] 1988, writ denied).  Therefore, as a
matter of law, the Association has Developer Rights only as to the Columbia
Lakes Properties.  

Under the unambiguous language of the relevant
instrument, CLT Properties (Tenneco Realty’s assignee) agreed with Marzo that
Marzo would receive the Developer Rights as to the property conveyed to Marzo
by CLT Properties (collectively, the “Marzo Properties”).  Therefore, as a
matter of law, Marzo has Developer Rights only as to the Marzo Properties.  Similarly,
under the unambiguous language of the relevant instrument, CLT Properties
(Tenneco Realty’s assignee) agreed with Enero that Enero would receive the
Developer Rights as to the property conveyed to Enero by CLT Properties
(collectively, the “Enero Properties”).  Therefore, as a matter of law, Enero has
Developer Rights only as to the Enero Properties.  

It would be unreasonable and contrary to the
unambiguous language of the relevant instruments to construe all parties with
Developer Rights as being the “Developer” as to all reserves.  Instead, as a
matter of law, (1) the Association is the sole “Developer” as to the Columbia
Lakes Properties; (2) Marzo is the sole “Developer” as to the Marzo Properties;
and (3) Enero is the sole “Developer” as to the Enero Properties.  

The Association asserts that, in the instruments by
which Marzo and Enero received their respective Developer Rights, the parties
expressly stated that the assignment of Developer Rights therein was subject to
the Partial Transfer, in which the Association’s assignor received Developer
Rights as to the Columbia Lakes Properties, as well as the rights and duties
regarding the Architectural Control Committee and Columbia Lakes Maintenance
Fund Committee.  But, the respective Developer Rights of Marzo and Enero are
not made subordinate to or coterminous with the Association’s Developer Rights because
these subsequent instruments are subject to the Partial Transfer.  The
assignors in the subsequent instruments do not purport to assign any Developer
Rights that were transferred in the Partial Transfer, and the fact that these
assignments are subject to the Partial Transfer does not support the
declaratory relief granted by the trial court.  

The Association also relies upon Tenneco Realty’s
statement in the Original Restrictions that Tenneco Realty desired “to create
and carry out a uniform plan and scheme for the improvement, development and
sale of certain property in Columbia Lakes.”  Though Tenneco Realty did state
this desire in 1972, it chose the Original Restrictions as the means by which
to pursue and effect this desire.  As discussed above, the Original
Restrictions allow for partial transfers of Developer Rights as to different
properties.  Presuming that CLT Properties’s assignment of Developer Rights to
more than one entity may thwart Tenneco Realty’s stated desire for a uniform
plan and scheme,  CLT Properties had the right to do so under the unambiguous
language of the Original Restrictions.  We must give effect to this clear language,
and we cannot alter the unambiguous provisions of the Original Restrictions based
on a general statement of intent.  See Ayres Welding Co. v. Conoco, Inc.,
243 S.W.3d 177, 181 (Tex. App.—Houston [14th Dist.] 2007, pet. denied).  Though
the Association argues that the trial court’s construction of the instruments
is sensible and fair, we are guided by a legal standard that requires us to determine
whether this construction gives effect to the unambiguous language of these
instruments.  See Helmerich & Payne Int’l Drilling Co. v. Swift Energy
Co., 180 S.W.3d 635, 646 (Tex. App.—Houston [14th Dist.] 2005, no pet.).  Concluding
that it does not, we hold that the trial court erred in rendering the declaratory
relief contained in its summary judgment.[4] 
Accordingly, we sustain the Developers’ third issue.  Having sustained this
issue, we need not reach the Developers’ second, fourth, fifth, or sixth issues.

C.        Did the trial court err in denying
the Developers’ motion for summary judgment?

In their seventh issue, the Developers assert the
trial court should have granted summary judgment in their favor.  In their
brief argument under this issue, the Developers assert that, for the reasons
stated earlier in their appellate brief, there is no genuine fact issue, and
they are entitled to summary judgment as to five items that they raised in the
trial court and on appeal.  But these five items are summary-judgment grounds;
the Developers did not ask the trial court to make a declaration as to any of
these five grounds.  In their motion, the Developers asked the trial court to
render judgment that the Association take nothing by its declaratory judgment
action other than a declaration that the Purported Amendments are “invalid and
of no force or effect.”  The Developers have presented no appellate argument in
support of the proposition that they were entitled to this relief as a matter
of law.  Nor have the Developers presented argument that the summary-judgment evidence
proved as a matter of law that (1) the Association was not entitled to any of
the relief requested in its petition, which contained a request that the trial
court make a judicial determination and declaration of the Association’s
rights, power, and authority under the recorded documents regarding its role as
a Developer of the Subdivision; or (2) the Purported Amendments are “invalid
and of no force or effect,” which would mean that the Purported Amendments are
not effective as to the reserve areas contained in the Columbia Lakes
Properties.  We conclude that the argument under the seventh issue does not
show the Developers’ entitlement to the summary-judgment relief requested in
their motion.  Accordingly, we overrule the seventh issue.  

IV.  Conclusion

The trial court’s
judgment is supported by the pleadings.  But the trial court’s only declaration
is contrary to the unambiguous language of the relevant instruments.  The
Developers have not presented argument that they were entitled to the relief
requested in their summary-judgment motion; therefore, they have not shown that
the trial court erred in denying this motion.  Though the trial court erred in
rendering judgment, the Association and the Developers each have a request for
declaratory relief pending that has not been resolved by this appeal. 
Accordingly, we reverse the trial court’s judgment, and we remand for further
proceedings consistent with this opinion, including but not limited to, consideration
by the trial court of the remaining requests for declaratory relief and the
parties’ requests for attorney’s fees under section 37.009 of the Texas Civil                                                                                                                                                                                                   Practice
and Remedies Code.

 

                                                                                    

                                                                        /s/        Kem
Thompson Frost

                                                                                    Justice

 

Panel consists of Justices Frost, Boyce,
and Sullivan.









[1] Separate
deed restrictions were filed for each section of the Subdivision, but all
contain substantially similar language.





[2] CLT
Properties, Inc. voluntarily converted to a limited partnership known as CLT
Properties, Ltd. during the series of events surrounding this case.  This
change is of no consequence to this proceeding, and we refer to both entities
as “CLT Properties.”





[3] Though the
Developers noted in the trial court that the Association had effectively
conceded that the Purported Amendments were not valid as to the Developers’
properties, the Developers did not object to an alleged lack of pleadings when
the Association sought the relief in question in its summary-judgment motion. 
Even if the Association had failed to seek the relief in question in its
petition, we would conclude that this issue was tried by consent.  See Roark
v. Stallworth Oil & Gas, Inc., 813 S.W.2d 492, 494–95 (Tex. 1991) (applying
in summary-judgment context the rule that a party who allows an issue to be
tried by consent and fails to raise the lack of pleading before submission of
the case cannot raise the pleading deficiency for the first time on appeal).    





[4] In the
second item in its judgment, the trial court simply states that certain
property is included in the term “Reserve” parcel for the purposes of the
declaration in the first item.  In the second item, the trial court did not
declare that the property described therein was part of the Subdivision. 
Therefore, the second item is not a separate declaration and must be reversed
along with the declaration in the first item.