**Affirmed in Part, Reversed and Remanded in Part, and Memorandum Opinion filed August 20, 2020**



In The

# Fourteenth Court of Appeals

---

## NO. 14-18-00986-CV

---

## TEXAS LAW SHIELD, LLP, WALKER & RICE, P.C., T. EDWIN WALKER, AND DARREN R. RICE, Appellants

## V.

## BRAD CROWLEY AND TERRILYN CROWLEY, Appellees

---

**On Appeal from the 11th District Court
Harris County, Texas
Trial Court Cause No. 2013-65980**

---

## MEMORANDUM OPINION

Appellants Texas Law Shield LLP, Darren Rice, Edwin Walker, and Walker & Rice, P.C., appeal from the final judgment in favor of appellees Brad Crowley and Terrilyn Crowley on their barratry claims against appellants. Because we conclude that appellants' summary judgment evidence created a genuine issue of material fact on Mr. Crowley's claims against them, we reverse in part, affirm in

part, and remand to the trial court for further proceedings.

## BACKGROUND

This is not the first time this dispute has appeared in this court. In 2016, this court reversed the trial court's class-certification order and remanded the case to the trial court. *Tex. Law Shield, LLP v. Crowley*, 513 S.W.3d 582, 584 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). The opinion includes a thorough recounting of the facts of the case up to that point in time and we do not repeat them here. *Id.* at 584–87.

Once the case was remanded to the trial court, the Crowleys filed a motion asking the trial court to reconsider its prior order granting appellants' motion for summary judgment on the Crowleys' barratry claims based on alleged violations of the Texas Penal Code and alleged violations of the Texas Disciplinary Rules except for Rules 7.03(b) and (d). Appellants filed a response opposing the Crowleys' motion and the Crowleys, in turn, filed a reply. The Crowleys attached excerpts from Brad Crowley's deposition to that reply. During Mr. Crowley's deposition, appellants questioned him about the timing of his joining the Texas Law Shield program. Mr. Crowley conceded that his credit card receipt was time-stamped 8:37 a.m. Mr. Crowley even admitted that he did not recall the exact time that he paid for the Texas Law Shield program, but he did testify that he signed up and paid after the Texas Law Shield salesman made his presentation. In addition, appellants asked Mr. Crowley if he signed up early in the morning after he saw the Texas Law Shield materials and posters on display at Spring Guns and Ammo, which had signed a facilities agreement with Texas Law Shield, where he and his wife took the concealed handgun certification class. *See id.* at 585 ("Texas Law Shield was allowed to market the Texas Law Shield program in conjunction with CHL classes and to post advertising and other materials at the facilities in

exchange for a $30 payment for each person submitting a Texas Law Shield contract at the facility."). Mr. Crowley responded that he did not "remember it that way, no." Instead, Mr. Crowley testified that he believed that he signed up in the middle of the day that he and his wife took the concealed handgun certification class. Ms. Crowley testified that she thought the sales presentation occurred later in the class, when there was "still a little more" class time. The trial court granted the Crowleys' motion for reconsideration and it withdrew its order granting appellants' motion for partial summary judgment.

The Crowleys also moved for partial summary judgment on "their individual claims on the grounds that [appellants] violated Texas Disciplinary Rule of Professional Conduct Rule 7.03(b) and 7.03(d), and are therefore liable for the statutory penalties and other damages provided under § 82.0651 [of the Texas Government Code]." The Crowleys argued there were no genuine issues of material fact on the amount of the statutory penalties or their damages, and they asked the trial court to award Ms. Crowley the statutory penalty of $10,000 from Rice, Walker, Texas Law Shield, and Walker & Rice, P.C. They also asked the trial court to award Mr. Crowley $151.35, the amount he had paid for his Texas Law Shield membership. Appellants filed a response and a cross-motion for summary judgment on the Crowleys' claims. The trial court granted the Crowleys' motion and denied appellants' cross-motion.

The Crowleys' request for attorneys' fees was then tried to a jury. The jury awarded the Crowleys $96,233.75 in attorneys' fees through trial along with additional fees if there was an appeal. The trial court subsequently signed a final judgment based on the partial summary judgment and the jury's award of attorneys' fees. This appeal followed.

**ANALYSIS**

3

Appellants raise a single issue on appeal making multiple arguments that the trial court erred when it granted the Crowleys' motion for summary judgment. We construe each argument as a separate issue and address them in order.

## I.  Standard of review and applicable law

We review a trial court's order granting a traditional summary judgment de novo. *Mid-Century Ins. Co. v. Ademaj*, 243 S.W.3d 618, 621 (Tex. 2007). When a plaintiff moves for summary judgment on its cause of action, it must conclusively prove all essential elements of its claim as a matter of law. *Cullins v. Foster*, 171 S.W.3d 521, 530 (Tex. App.—Houston [14th Dist.] 2005, pet. denied). When a defendant moves for summary judgment, it must disprove at least one essential element of the plaintiff's cause of action in order to prevail. *Doggett v. Robinson*, 345 S.W.3d 94, 98 (Tex. App.—Houston [14th Dist.] 2011, no pet.). When both parties move for summary judgment, each party bears the burden of establishing that it is entitled to judgment as a matter of law. *City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 356 (Tex. 2000). When the trial court grants one motion and denies the other, the appellate court reviews both motions and determines all questions presented. *Id.* The reviewing court should then render the judgment that the trial court should have rendered, or reverse and remand if neither party has met its summary judgment burden. *Id.*

This appeal also requires us to review the trial court's interpretation and application of the Texas civil barratry statute. Statutory interpretation presents a question of law subject to de novo review. *Tex. Law Shield, LLP*, 513 S.W.3d at 588. We look to the statute's plain meaning because we presume that the Legislature intends the plain meaning of its words. *Id.* We view statutory terms in context, giving them full effect. *Id.* We presume that every word of a statute was used for a purpose, and every omitted word was purposefully not chosen. *Id.* In

4

determining the plain meaning of a statute, we construe the language according to the rules of grammar and common usage. *Id.* "As a general principle, we eschew constructions of a statute that render any statutory language meaningless or superfluous." *Id.* (quoting *City of Dallas v. TCI West End, Inc.*, 463 S.W.3d 53, 57 (Tex. 2015)).

In the present case, the Crowleys sued appellants for violating the Texas civil barratry statute. *See* Tex. Gov't Code § 82.0651.[1] To show a violation of the barratry statute, a plaintiff must demonstrate that the defendant attorney procured a contract or solicited a person in violation of either section 38.12 of the Texas Penal Code or Rule 7.03 of the Texas Disciplinary Rules of Professional Conduct.[2] *Id.*

---

[1] The conduct at issue here occurred in 2012. At that time, section 82.0651 provided, in relevant part, that:

> (a) A client may bring an action to void a contract for legal services that was procured as a result of conduct violating the laws of this state or the Texas Disciplinary Rules of Professional Conduct of the State Bar of Texas regarding barratry by attorneys or other persons, and to recover [certain specified amounts] . . . .
>
> . . .
>
> (c) A person who was solicited by conduct violating the laws of this state or the Texas Disciplinary Rules of Professional Conduct of the State Bar of Texas regarding barratry by attorneys or other persons, but who did not enter into a contract as a result of that conduct, may file a civil action against any person who committed barratry.

Act of May 5, 2011, 82d Leg., R.S., ch. 94, § 2, sec. 82.0651, 2011 Tex. Gen. Laws 534, 535 (current version at Tex. Gov't Code § 82.0651). Both the 2012 version and the amended statute cover the alleged conduct. We will therefore cite the current version of the statute. *See Tex. Law Shield*, 513 S.W.3d at 586, n.4.

[2] Rule 7.03 provides, in pertinent part:

> (a) A lawyer shall not by in-person contact, . . . seek professional employment concerning a matter arising out of a particular occurrence or event, or series of occurrences or events, from a prospective client or nonclient who has not sought the lawyer's advice regarding employment or with whom the lawyer has no family or past or present attorney-client relationship when a significant motive for the lawyer's doing so is the lawyer's pecuniary gain. . . .
>
> (b) A lawyer shall not pay, give, or offer to pay or give anything of value to a

Only Rule 7.03 of the Texas Disciplinary Rules of Professional Conduct is relevant to this appeal because, after the trial court denied the Crowleys' second motion for partial summary judgment based on appellants' alleged violations of the Texas Penal Code, the Crowleys abandoned those claims when they went to trial only on their claim for attorneys' fees. *See Gomez Acosta v. Falvey*, 594 S.W.3d 386, 396 (Tex. App.—El Paso 2019, no pet.) (addressing abandonment of sanctions motion); *Lederer v. Lederer*, 561 S.W.3d 683, 703 (Tex. App.—Houston [14th Dist.] 2018, no pet.) ("Because the Lederer Parties voluntarily dismissed or abandoned all of their affirmative claims after prevailing on the 15% override, they could only recover attorney's fees for their defense of Howard's declaratory judgment action on the 15% override."); *Anani v. Abuzaid*, No. 05-16-01364-CV, 2018 WL 2926660, at *10 (Tex. App.—Dallas June 7, 2018, no pet.) (mem. op.) (concluding party abandoned claim because he "did not seek to obtain a jury verdict" on that claim).

## II. The law-of-the-case doctrine does not dictate a reversal in favor of appellants.

Appellants argue in their first issue that the trial court erred when it granted the Crowleys' motion for summary judgment and denied their motion because the law-of-the-case doctrine controls the outcome of this appeal. In appellants' view, the law-of-the-case doctrine controls because (1) this court decided in the first appeal that, to establish a violation of Rule 7.03(b), a barratry plaintiff must prove

person not licensed to practice law for soliciting prospective clients for, or referring clients or prospective clients to, any lawyer or firm . . . .

. . .

(d) A lawyer shall not enter into an agreement for, charge for, or collect a fee for professional employment obtained in violation of Rule 7.03(a), (b), or (c).

Tex. Disciplinary Rules Prof'l Conduct R. 7.03, *reprinted in* Tex. Gov't Code tit. 2, subtit. G, app. A (Tex. State Bar R. art. X, § 9).

6

an improper solicitation was connected to a particular occurrence or event which created a need for legal services; and (2) the Crowleys did not prove the existence of such a particular occurrence or event as a matter of law. We disagree.

The law-of-the-case doctrine provides that questions of law decided on appeal to a court of last resort will govern the case throughout its subsequent stages. *Hudson v. Wakefield,* 711 S.W.2d 628, 630 (Tex. 1986). Intermediate courts of appeal have consistently treated their own prior decisions as binding under the law-of-the-case doctrine. *Virani v. Cunningham*, No. 14-11-00331-CV, 2012 WL 355653, at *7 (Tex. App.—Houston [14th Dist.] Feb. 2, 2012, pet. denied) (mem. op.). The decision, however, to revisit a previous holding is left to the discretion of the court under the particular circumstances of each case. *Id.* at *6 (citing *City of Houston v. Jackson,* 192 S.W.3d 764, 769 (Tex. 2006)). The law-of-the-case doctrine only applies to questions of law, and does not necessarily apply when either the issues or the facts presented at successive appeals are not substantially the same as those involved in the first trial and appeal. *Id.* (citing *Hudson*, 711 S.W.2d at 630).

We conclude that the law-of-the-case doctrine does not control the outcome here because the original appeal addressed only the trial court's class-certification order and did not reach any issues on the merits of the Crowleys' claims against appellants. *See Tex. Law Shield, LLP*, 513 S.W.3d at 587 ("[W]e agree with the trial court that the issue at this stage of the case is not whether appellants' conduct constituted barratry under sections 7.03(b) or (d) of the Texas Disciplinary Rules of Professional Conduct. Instead, the issue before us is whether the trial court abused its discretion when it certified the class action."). While we did state in our prior opinion that "the scope of the prohibition against a lawyer hiring a non-lawyer for soliciting prospective clients in subsection (b) should be informed by

7

the scope of the prohibition against lawyers directly seeking professional employment from a prospective client in subsection (a)," this determination was limited to the requirement found in subsection (a) that the prospective client did not initiate contact with the attorney. *See id.* at 591–92 (internal quotation marks omitted). We did not address the question whether, much less hold that, a barratry plaintiff must prove an improper solicitation was connected to a particular occurrence or event which created a need for legal services to establish a violation of Rule 7.03(b). *See id.* at 589–92 (concluding class claims did not meet predominance requirement because there would be a need for individualized inquiry into whether, among other things, the barratry plaintiff had initiated the contact with the attorney). Therefore, it is not the law of the case that, to establish a violation of Rule 7.03(b), barratry plaintiffs such as the Crowleys must prove that a solicitation for the provision of legal services was connected to a particular occurrence or event that has created a need for legal services.[3]

Even if that was the law of the case, we conclude that the Crowleys' summary-judgment evidence established as a matter of law that the solicitation was connected to a particular occurrence or event that created a need for legal services: attendance at a concealed handgun certification class. When examining the existence of a perceived need for legal services, we conclude the determination must be made from the perspective of the barratry plaintiff. *See* Tex. Gov't Code § 82.0651(e) ("This section shall be liberally construed and applied to promote its underlying purposes, which are to protect those in need of legal services against unethical, unlawful solicitation and to provide efficient and economical procedures

---

[3] To the extent appellants argue independently of the law-of-the-case doctrine that we should infer such a requirement into Rule 7.03(b), we decline that invitation because the plain language of the Rule does not impose a particular occurrence or event requirement. *See Tex. Law Shield, LLP*, 513 S.W.3d at 588 (stating we presume that every word of a statute was used for a purpose, and every omitted word was purposefully not chosen).

8

to secure that protection."). In their reply brief appellants argue attendance at such a class is insufficient. Appellants further assert that the barratry statute is focused on vulnerable potential clients who have a particularized legal need, such as "someone already in the hospital or a loved one at a funeral home." Neither the barratry statute nor Rule 7.03(b) contain language limiting barratry claims to potential clients who have been physically injured. *See* Tex. Gov't Code § 82.0651(e). If the Legislature wished to restrict barratry claims to such limited situations, it could have included language accomplishing that goal. It did not. Even if we accept appellants' initial premise, that the barratry statute is focused on protecting vulnerable potential clients, we conclude concealed handgun class attendees such as the Crowleys meet that requirement. For example, Ms. Crowley testified that she "was very worried that if my husband ever shot someone that was breaking in, we were going to lose every dime we had." Indeed, Texas Law Shield's entire business plan exploits a belief that concealed handgun certification class attendees need legal services. This is demonstrated on Texas Law Shield's own website where they stated: "This is peace of mind every gun owner can afford. Get protected. Get Texas Law Shield. It just makes sense!" *See Tex. Law Shield*, 513 S.W.3d at 584. We overrule appellants' first issue.

**III. There is a fact issue on whether Mr. Crowley bought into the Texas Law Shield program after he was solicited in violation of Rule 7.03(b).**

In their second issue appellants argue that the trial court erred when it granted summary judgment in favor of Mr. Crowley on his barratry claims because the credit card receipt raised a genuine issue of material fact on whether Mr. Crowley signed the Texas Law Shield contract before he was solicited by Tom Blalock, Texas Law Shield's paid sales representative at Spring Guns and Ammo the day of the Crowleys' class. *See* Tex. Disciplinary Rules Prof'l Conduct R. 7.03(b) (providing that a "lawyer shall not pay, give or offer to pay or give

anything of value to a person not licensed to practice law for soliciting prospective clients"). We agree.

While the Crowleys could not recall the exact time when the class instructor introduced Mr. Blalock and Mr. Blalock made his Texas Law Shield sales presentation, they both agreed that Mr. Crowley signed up for the Texas Law Shield program after Mr. Blalock made his presentation. According to Mr. Crowley, he believed that he signed up in the middle of the concealed handgun certification class. Ms. Crowley on the other hand testified that Mr. Crowley signed up toward the end of the class. Mr. Blalock does not dispute the Crowleys' testimony in either his affidavit or his deposition testimony. Mr. Blalock instead discussed only general information about the way his sales presentations normally occur and he offered no testimony on the specific time he made his sales presentation on November 17, 2012. Appellants offer only the credit card receipt, which was time-stamped 8:37 a.m., in opposition to Mr. Crowley's motion for summary judgment. We conclude that, under the summary judgment standard of review, this receipt is sufficient to raise a genuine issue of material fact on whether Mr. Crowley purchased a membership in the Texas Law Shield program before Mr. Blalock's sales presentation. *See Adiuku v. Ikemenefuna*, No. 14-13-00722-CV, 2015 WL 778487, at *6 (Tex. App.—Houston [14th Dist.] Feb. 24, 2015, no pet.) (holding trial court erred when it granted plaintiff's motion for summary judgment because there was a fact issue on plaintiff's cause of action). We sustain appellants' second issue on appeal.[4]

---

[4] We sustain appellants' issue only with respect to Mr. Crowley's barratry claim. There is no fact issue regarding Ms. Crowley sitting through the Texas Law Shield sales presentation. Appellants' only challenge to the trial court's summary judgment on the Crowleys' Rule 7.03(d) claims is that they are derivative of their Rule 7.03(b) claims. Because we reverse the summary judgment in favor of Mr. Crowley on his Rule 7.03(b) claim, we also reverse on his Rule 7.03(d) claim. Because we have affirmed the summary judgment in favor of Ms. Crowley on her Rule

**IV.    Appellants' solicitation of Ms. Crowley is not excused by Mr. Crowley's agreement to retain appellants.**

Appellants argue in their third issue that "because Texas Law Shield was already in a relationship with Mr. Crowley, it had the absolute right to solicit business from Mrs. Crowley." Appellants assert that Rule 7.03(a) supports this contention. *See* Tex. Disciplinary Rules Prof'l Conduct R. 7.03(a) (prohibiting a lawyer from directly soliciting a person "who has not sought the lawyer's advice regarding employment or with whom the lawyer has no family or past or present attorney-client relationship"). We conclude that the reference to family in Rule 7.03(a) refers to a member of the lawyer's family, not a member of a client's family. *See Bennett v. Comm'n for Lawyer Discipline*, 489 S.W.3d 58, 67–68 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (applying plain language of Disciplinary Rule 3.02 to attorney's conduct). We overrule appellants' third issue.

**V.    The Crowleys remaining in the room for the Texas Law Shield sales presentation did not excuse appellants' barratry.**

In their fourth issue appellants argue that the barratry laws do not apply to their conduct during the Crowleys' concealed handgun certification class because the Crowleys "sought the solicitation by voluntarily remaining in the room to hear" the Texas Law Shield sales presentation. In support of this argument appellants once again cite Disciplinary Rule 7.03(a), which prohibits a lawyer from directly soliciting "a prospective client or nonclient who has not sought the lawyer's advice regarding employment . . . ." *See* Tex. Disciplinary Rules Prof'l Conduct R. 7.03(a). We disagree with appellants' interpretation of Rule 7.03(a). The rule does not create an exception to the barratry laws when a prospective client seeks a solicitation by a paid sales representative. The exception is instead limited to those

---

7.03(b) claim, we need not further address appellants' challenge to the summary judgment on Ms. Crowley's Rule 7.03(d) claim.

11

situations where the prospective client seeks "the lawyer's advice regarding employment." *Id.; see Tex. Law Shield, LLP*, 513 S.W.3d at 588 (stating that a reviewing court must presume that every word of a statute was used for a purpose, and every omitted word was purposefully not chosen). There is no evidence in the summary judgment record that the Crowleys sought the lawyer appellants' advice regarding employment by simply remaining in the same room where the Texas Law Shield sales presentation was taking place. We overrule appellants' fourth issue.

## VI. Non-attorneys can be liable for barratry.

In their fifth issue, appellants argue in the alternative that the prohibitions against barratry do not apply to law firms and legal-service-contract companies. We disagree. At the time the Texas Law Shield sales presentation attended by the Crowleys took place, section 82.0651 provided that "a client may bring an action to void a contract for legal services that was procured as a result of conduct violating the laws of this state or the Texas Disciplinary Rules of Professional Conduct of the State Bar of Texas regarding barratry by attorneys or other persons . . . ." *See* Act of May 5, 2011, 82d Leg., R.S., ch. 94, § 2, sec. 82.0651, 2011 Tex. Gen. Laws 534, 535. It further provided that a person who was solicited by conduct violating the laws and rules against barratry, and did not sign a contract, could "file a civil action against any person who committed barratry." *Id.* We therefore conclude that the barratry statute applies to Texas Law Shield and Walker & Rice, P.C., the non-lawyer appellants.

Finally, appellants argue there is no evidence that "the lawyers paid the person who solicited the Crowleys." The evidence was undisputed that Mr. Blalock was the person who solicited the Crowleys at the Spring gun range where they took their concealed handgun certification class. In his affidavit Mr. Blalock

12

averred that he was "employed as a sales representative for Texas Law Shield LLP (TLS)." Mr. Blalock further averred in his affidavit that he had "made hundreds of in-person presentations about the legal service contract program offered by TLS, including at gun stores and gun facilities and spoken with thousands of individuals in doing so." We conclude that the Crowleys established as a matter of law that they were solicited by an employee of Texas Law Shield in violation of the barratry laws. We overrule appellants' fifth issue on appeal.

## CONCLUSION

Having sustained appellants' second issue, we reverse the summary judgment with respect to Mr. Crowley's barratry claims based on Rules 7.03(b) and 7.03(d) and remand those claims to the trial court for further proceedings. Having overruled appellants' challenges to the summary judgment in favor of Ms. Crowley on her barratry claims, we affirm that part of the trial court's summary judgment. Because the award of attorneys' fees is not segregated between Mr. Crowley and Ms. Crowley and we have reversed the summary judgment in favor of Mr. Crowley, we reverse the final judgment's award of attorneys' fees and remand that claim to the trial court for further proceedings.

/s/    Jerry Zimmerer
Justice

Panel consists of Justices Christopher, Wise, and Zimmerer.

13